ANGEL L. ARROYO, Appellant, *v.* THE REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. 1381. Decided November 5, 1962.

*José Sabater* for appellant. The respondent Registrar appeared by brief.

Mr. Justice Blanco Lugo delivered the opinion of the Court.

Appellant Ángel L. Arroyo brought a summary proceeding in the Superior Court, Mayagüez Part, to foreclose a mortgage constituted by deed No. 87 of July 9, 1957 before Notary Eudaldo Báez García by the spouses Antero Díaz Segarra and Rosa María Ríos in favor of the holder of a note to bearer for the principal sum of $3,000, interest thereon at the rate of nine per cent annually, and an additional credit of $300 for costs, expenses, and attorney's fees in the event of judicial sale, on four rural properties owned by the latter situated in the ward of Ovejas of the Municipality of Añasco, having an area of 24, 14, 8, and 5 cuerdas. Process having been served pursuant to law without the debtors having deposited the sums due which on the filing date of the proceeding amounted to $3,772.50, appellant sought and obtained an order to sell at public auction on the basis of the assessment stated for each property in the mortgage deed "which will serve as basis for the first auction sale."

The only bidder who appeared at the first and only auction sale was the foreclosing creditor himself, who offered for the properties the same amounts in which they were appraised by the contracting parties, to wit: $1,075 (24 cuerdas), $875 (14 cuerdas), $675 (8 cuerdas), and $675 (5 cuerdas). No better offer having been made, the bid was awarded to him and the corresponding deed of judicial sale executed by the marshal in favor of appellant.

The deed having been presented in the Registry of

Property of Mayagüez, record was denied on the ground that the court had ordered the sale at public auction of the mortgaged properties on the basis of the assessment set forth in the mortgage deed, the amounts of which were less than the preferred credits which encumbered each property [1] and which were awarded at the first auction sale for the assessed values,[2] "thereby voiding the summary proceeding pursuant to arts. 128 of the Mortgage Law and 172 of the Regulations of the Mortgage Law, and the holding in the cases of *Cintrón et al.* v. *Banco Territorial y Agrícola*, 15 P.R.R. 495, and *Hernández* v. *Registrar*, 66 P.R.R. 814." The present administrative appeal was timely taken from such denial.

 1. When the Mortgage Law for Overseas Provinces which took effect in Puerto Rico on October 5, 1893 was enacted, one of the most important reforms incorporated in the former law in force since May 1, 1880 consisted in the adoption of the summary proceeding to collect the mortgage

---

[1] According to the decision denying record, the preferred credits referred to by the registrar are the following mortgage credits all of which were constituted on a date prior to that of the credit object of foreclosure: (1) in favor of the Federal Land Bank of Baltimore, for $4,100 principal, $922.50 interest, $300 for costs in the event of foreclosure, and other accessory credits; (2) in favor of the holder of a note, for $3,000 principal and other credits; (3) in favor of the holder of a note, for $1,000 principal, interest at 9 per cent, and $200 foreclosure credit; (4) in favor of the holder of a note, for $1,000 principal; (5) in favor of the holder of a note, for $545 principal; and (6) in favor of the holder of a note for $1,000. The total of the principal of the preferred credits amounts to $10,645.

Owing to the fact that the four properties answer solidarily for the credit in favor of the Federal Land Bank—art. 119 of the Mortgage Law, as amended by Act No. 62 of July 21, 1923 (Sess. Laws, p. 406); 30 L.P.R.A. § 215)—each property answers for the following amounts of the preferred credits: 24 cuerdas, $6,800; 14 cuerdas, $5,876.66; 8 cuerdas, $5,221.66; and 5 cuerdas, $4,646.68.

[2] The notice published was not copied in the deed of judicial sale and we do not therefore know whether the preferred credits were set forth in order to notify the bidders of their existence. Paragraph 5 of art. 128 of the Mortgage Law, 30 L.P.R.A. § 224, and par. 1 of art. 172 of the Regulations, 30 L.P.R.A. § 1093, provide that the edicts shall be published "setting forth the titles."

credits,[3] one of the basis of which was the prior assessment of the mortgaged property. Until then, according to art. 141 of the Act of 1880, "upon expiration of the period for payment of the debt, the creditor may request an order to foreclose all the mortgaged properties...," in which case there shall be followed the distraint proceeding provided in the Law of Civil Procedure, § 1483 *et seq.* of which required the appraisal of the properties. Section 1516 of the Law of Civil Procedure provided that "if the execution should have been issued at the instance of a second or third mortgage creditor, *the amount of the preferred mortgage credits* for which the estate sold is liable shall be deposited in the establishment provided therefor, and the balance shall be delivered without delay to the execution creditor, if the same

---

[3] In the message addressed to the Courts on May 26, 1893 by Antonio Maura y Montaner, then Overseas Minister, to which was attached the mortgage reform act in question (Mortgage Law for the Overseas Provinces, pp. 9–10, 1893 official ed.), it was said:

"But where the voice of experience has been heard with the greatest clamor against the law, demanding immediate relief, is where it refers to the procedure for making mortgage debts effective. Its crushing confusion, the uncertainty of results, and its incalculable cost restrain capital or suggest usurious conditions; sales and resales take the place of loans, with the object of avoiding all proceedings to the prejudice of the landowner; interest is stipulated which triplicates the capital loaned, and perhaps by the employment of other means the debtor is exposed to penal responsibility, converting the sanctity of laws enacted for the punishment of crimes into a vile instrument of avarice against the unfortunate. Distrust causes these means to be employed because the legal procedure does not satisfy the reasonable requisites of contracts, and to uproot these evils, to furnish land with the capital it needs and to give the lender assurances of speedy and easy recovery of his loans, is the object of the most important reform proposed by the Government, suppressing proceedings which, without positively guaranteeing one's rights, destroy those most sacred. *Previous appraisement*, uniformity of judicial action in all necessary investigations, suppression of all litigation, only one summons and the immediate sale by auction, are the basis of the new law. We have abolished suits, exemptions, letters requisitorial (exhortos), writs of attachment on the mortgaged property, proceedings in the nature of a demurrer, simultaneous auctions, and a great many other barriers in the path of the credit of realty, which had been placed with the best of intentions, but from which those in good faith were the only victims." (Italics ours.)

should not exceed or be less than the amount of his credit." [4]

■ The Act of 1893 incorporated in art. 127 the prerequisite of appraisal, providing that in the mortgage shall appear the value of the estate as appraised by the contracting parties, which shall serve as a basis for the *"only judicial sale"* in case of foreclosure. For a more complete historical exposition, see *Land Authority of P.R.* v. *Registrar*, 82 P.R.R. 327, 329–32 (1961). In the following art. 128 it was provided that "if there is no bidder, the claimant may demand that the property be awarded to him, being responsible for all prior [5] liens, if there be any," and that "when an estate is sold at public auction *at the instance of a second or subsequent mortgagee* or common creditors, the sale shall be declared null and void if a sufficient sum is not offered to cover *all previously recorded debts*, including the interest which it appears is stipulated according to the Registry." And in the third paragraph of art. 172 of the Regulations it was provided that "when the estimate of the property agreed to in

---

[4] This same system of purging the prior mortgages prevailed in Spain until the adoption of the Mortgage Law which took effect on April 21, 1909.

Notice should be taken of the remarkable relation between this art. 1516 and the seventh paragraph of art. 172 of the Regulations which regulated the procedure if there should be no bidder at the first sale, and which according to our holding in *Vechini* v. *Registrar*, 84 P.R.R. 208 (1961), is not in force.

This § 1516 should in turn be connected with the following § 1518 providing for the cancellation of the inscriptions of the mortgages to which the property sold may be subject, issuing an order stating that "the amount of the claim of the preferred creditor has been deposited." See José P. San Ramón Colino, *El Juicio Ejecutivo y sus Formularios* 182–84 (Mayo ed., Madrid, 1959).

[5] In *Vechini*, *supra*, citing 7 Morell 125, we said that the words "prior" and "preferred" referred interchangeably to the "encumbrances" or to the "liens."

It is to be noted that as respects the encumbrances properly speaking, the system of *subsistence* has always govern, it being provided in par. 4 of art. 172 of the Regulations that "in order to determine the amount of the preferred *obligations*, the judge shall capitalize the amount of the rent charges and other preferred perpetual liens, *for the payment of which the purchaser shall be liable, and which shall be deducted from the price*, this fact being set forth in the notices."

the instrument constituting the loan, by virtue of which the proceedings are held, exceeds the amount of the preferred obligations secured by the property, said estates shall be inserted in the notices as the amount acceptable at the public sale," but "when the preferred obligations exceed it, their total amount shall be the minimum acceptable at the public sale."

The Act Relating to Judgments and the Manner of Satisfying Them (Sess. Laws, p. 115; 32 L.P.R.A. §§ 1140–47) was enacted on March 9, 1905 and had the effect of repealing art. 127 *supra*, and it was therefore unnecessary to appraise the mortgage property for the purposes of the auction sale, which was carried out without a minimum basis. In fact, the summary foreclosure proceeding was effective only as of the filing of the initial writing until payment was tendered. *Carrión* v. *Registrar*, 43 P.R.R. 104 (1932); *Iglesias* v. *Registrar*, 43 P.R.R. 18 (1932); *Porto Rican Leaf Tobacco Co.* v. *Registrar*, 23 P.R.R. 470, 471 (1916); *Cintrón et al.* v. *Banco Territorial y Agrícola*, 15 P.R.R. 495, 510 (1909); *Bolívar et al.* v. *The Registrar of Property*, 13 P.R.R. 362 (1907); *Banco Territorial y Agrícola* v. *Erwin, District Judge*, 10 P.R.R. 388 (1906); *Giménez et al.* v. *Brenes*, 10 P.R.R. 124 (1906). In the procedure followed—without being subject to appraisal for the auction sale—and out of deference to the principle that the vested rights acquired by preferred creditors could not be affected—any award made was subject to the prior credits.

Owing to the many abuses committed as a result of the lack of appraisal, with the consequent adjudication or award for derisive amounts, the Legislative Assembly by Act No. 69 of May 2, 1931 (Sess. Laws, p. 432) amended art. 127 as follows: [6]

---

[6] This legislation applies only to mortgage deeds executed after the effectiveness of Act No. 69 of 1931 *supra*, and the auction sales carried out persuant to the summary foreclosure of mortgages executed prior to its effectiveness need not conform to the procedure prescribed therein. *Cotto*

"The mortgage deed shall state the value at which the contracting parties appraise the estate, in order that it may ser⸜e as a basis for the first public sale which may be made, in the event that, the term of the loan having expired, the registry of the property does not show the payment of said loan."

In § 2 of that Act it was stated that the provisions of the Act of March 9, 1905, in so far as they conflict with the provisions of art. 127, were repealed.

It may be noted that the latter wording of art. 127 eliminates the reference to the only sale which appeared in the Act of 1893 and substitutes the same by first public sale, and further, by the addition of the second and third paragraphs, it expressly provides the minimum amount which shall prevail if a second sale or subsequent sales may be held. In connection with these subsequent sales, these two paragraphs are intertwined with paragraphs 6 to 9 of art. 172 of the Regulations [7] which, we repeat, are not in force.

v. *District Court*, 53 P.R.R. 349 (1938); *Carrión* v. *Registrar*, 43 P.R.R. 104 (1932); *Iglesias* v. *Registrar*, 43 P.R.R. 18 (1932).

[7] Those paragraphs read as follows:

"The sale shall be held in the manner prescribed for execution proceedings; but when two-thirds of the upset price fixed in the notices should not exceed the amount of the preferred obligations, the amount of the latter shall constitute the minimum bid admissible.

"If there should be no bidder at the first sale, the execution creditor may demand that the property be awarded to him at the upset price, according to the preceding paragraph, he assuming all prior liens and depositing with the court any surplus after his claim shall have been covered. This surplus shall be turned over to the proper person, the judge depositing it subject to his order in the public institution authorized to receive the same, if not delivered within 10 days after its deposit with the court.

"If the execution creditor should not apply for the award of the property to himself, he may request that the mortgaged property be again offered for sale, with a reduction of 25 per cent in the upset price fixed in the first sale, provided such reduction protects prior claims. For this purpose the plaintiff must present a new certificate issued by the registrar to the effect that this mortgage has not been canceled, if the proceedings shall have been suspended for more than six months. This sale shall be held in the same form as the first sale, bids being admissible which cover two-thirds of the reduced up-

So far the historical review of the legislation on the appraisal of the mortgaged property.

■■ 2. The problem of reconciling the provisions of arts. 127 and 128 of the Mortgage Law with art. 172 of the Regulations is most difficult.[8] This is due to their connection with other provisions of the Spanish Law of Civil Procedure which, we know, does not govern in Puerto Rico, save for a few exceptions. On the other hand, it is not clear whether the lawmaker attempted to adopt a system of subsistence of the encumbrances or liens when the property is awarded to the second or subsequent mortgagees, or if the system of purging the preferred credits consecrated in the foreclosure proceeding provided in the Law of Civil Procedure shall prevail—§ 1516 *supra*. We deem it advisable to make brief reference to both systems.

■ In the system of subsistence or maintenance of the preferred mortgages the foreclosure does not produce their extinguishment, but they are kept alive; in the purging system the preferred credits are extinguished by the foreclosure, and they are paid off with *the price of the auction sale*. Hence, the necessity that the minimum price cover, at least, the amount of these preferred obligations. As ROCA SASTRE in-

---

set price, provided they cover the credits which have preference over those of the plaintiff. The plaintiff may also request the award, under the conditions mentioned, if the second auction is totally or partially without result.

"If the second auction should not result in either a sale or award in payment, other auctions may be held on the petition of the plaintiff, who shall, in a proper case, comply with the requirement mentioned in the preceding paragraphs, the upset price thereat being equivalent to the preferred claims. In such a case the award for said price may also be requested [by the plaintiff], with the obligation of meeting the charges when they mature, he being subrogated in the place of the debtor with regard thereto."

[8] We refer to the first five paragraphs of art. 172, since in *Vechini* v. *Registrar*, 84 P.R.R. 208 (1961), we stated expressly that the last four paragraphs were no longer in force, since the sale is not carried out in the manner provided in the Spanish Law of Civil Procedure—the foreclosure proceeding—but by art. 127, as amended in 1931.

dicates (IV *Derecho Hipotecario* 870, 1954 ed.), "the property passes clear and free from mortgages, that is, cleansed from mortgages, to the purchaser or acquirer." In advocating the system of subsistence, JAIME GUASP, Professor of Procedural Law of the University of Madrid, states as follows: [9]

"It is not difficult to understand the inconveniences which such a system [purgation] entails, particularly for an efficient development of the territorial credit. In the first place, the owner of a second or subsequent mortgage ran the risk, at the time of foreclosure, that his guaranty be eliminated by a possible unfavorable result of the auction sale; in the second place, the preferred creditor saw his capital investment disappear by a liquidating operation which even change the nature of the right of which he is owner. That explains why not only in Spain but also in other countries the principle of the liquidation or extinguishment of the encumbrances has given way to the opposite principle: the principle of subrogation whereby such preferred encumbrances are transferred to the new acquirer of the property."

■ Registrar Eduardo Martínez Mora sums up the principal arguments in favor of the reform of 1909 as follows: [10]

(1) the knowledge of the prior mortgage which the foreclosing creditor already has; (2) the second mortgage is not covered by the property, but by the balance of the value of the first mortgage; (3) the preferred creditors are not a party to the proceedings; [11] (4) the indifferentiation which ought to exist between the judicial and the extrajudicial alienation (he

---

[9] *La Ejecución Procesal en la Ley Hipotecaria* 144–45. (Bosch ed., 1951, Barcelona).

[10] *El Sistema de Liquidación de Cargas y la Ley Hipotecaria*, 5 *Revista Crítica de Derecho Inmobiliario* 273–78 (1929).

[11] It does not seem fair that the prior creditors should bear the consequences of a proceeding to which they are not a party, especially if we consider that even in the case of creditors whose status in the registry is lower than that of the foreclosing creditor their credit subsists if they are not notified of the foreclosure in the manner provided by law. *Vendrell* v. *Torres*, 85 P.R.R. 842 (1962).

refers to that provided in art. 129 of the Spanish law). On this same subject, see 18 *Revista Crítica de Derecho Inmobiliario* 822 (1945) ; 17 *id.* 450 (1944) ; 15 *id.* 455 (1942) ; and 5 *id.* 117 (1929) ; V *Revista de Derecho Privado* 190 (1918).

In Spain the mortgage reform of 1909 abandoned the purge system of the Law of Civil Procedure and adopted that of subsistence of preferred liens and imposed the subrogation of the person of the purchaser in the payment of the personal credit secured by the mortgage.[12] To that effect art. 131 provides as follows:

"Eighth. The notices shall state: that the record and the certificate of the Registry referred to in rule 4 shall be available in the office of the notary public; that it shall be deemed that every bidder accepts the title as good, *and that the prior charges, and liens and those having preference—if any—over the credit of the claimant shall subsist, it being understood that the highest bidder accepts them and subrogates himself in their responsibility, and that the price of the sale shall not be applied to their extinguishment.*

"Ninth. The basis agreed upon in the mortgaged deed shall serve as basis for the auction sale and no bid shall be admitted which is less than such basis.

"Tenth. If there be no admissible bid at the first sale, the creditor may request that the property or properties be awarded to him in payment of his credit for the sum of the former, *accepting the subsistence of the prior and the preferred charges, if any, and subrogating himself in the obligation to satisfy them.*

"Eleventh. If the creditor does not accept the award, he may request that a second sale be held, the basis of which shall be 75 per cent of the former, and no bid lower than such basis shall be admitted; and if at such sale there be no admissible bid either, he may request that it be awarded to him for

[12] It is worth noting art. 227 of the Spanish Regulations of 1959 which provides that "for the purposes of art. 131 of the Act, the *simultaneous* encumbrances or liens or of the *same kind* as the credit of the foreclosing creditor shall be deemed to be preferred." Compare with the last paragraph of art. 125 of the Mortgage Law, 30 L.P.R.A. § 221; *Schluter* v. *Registrar*, 37 P.R.R. 654 (1928) ; *Ortiz* v. *Registrar*, 22 P.R.R. 316 (1915) ; *American Trading Co.* v. *Monserrat*, 19 P.R.R. 929 (1913).

the basis of the second sale and with the same condition contained in the preceding rule.

. . . . . . .

"Thirteenth. It shall be stated in the act of the sale that the highest bidder accepts the obligations set forth in rule 8, otherwise the bid shall not be awarded to him." [Italics ours.]

 Guided by the cardinal principle that the foreclosure of a credit of a lower rank should not prejudice a preferred credit, with a flexible criterion of interpretation of mortgage legislation which may respond to the development of our dynamic economy, promote contracting and impress the territorial credit with stability, and in consonance with the respect due the covenant between the debtor and the creditors; considering, further, that § 1516 of the Spanish Law of Civil Procedure [13] is not in force in Puerto Rico, we are bound to hold that when the foreclosing creditor adjudicates to property to himself at the first auction sale for the appraised value, it is not necessary to fix as minimum basis the amount of the preferred obligations, even though the latter exceed the contractual appraisal if the foreclosing creditor, even if he is a second creditor, assumes and answers for the preferred liens and charges—first paragraph of art. 127 and third paragraph of art. 128. And in this assumption neither the fourth paragraph of art. 128 nor the third paragraph of art. 172 of the Regulations comes into play.

 The judicial surgery which by way of interpretation we have been compelled to perform in order to give meaning to the legal provisions involved and give stability to the prevailing practice in the summary foreclosure proceeding, emphasizes once again the undeferable and urgent need to review without delay the existing mortgage legislation. On

---

[13] GUASP, *op. cit.* at 145, states that "it would have been sufficient to repeal § 1516 of the Law of Civil Procedure in order that the system of subsistence of encumbrances be deemed to be in force." Section 1516 was virtually consecrated in par. 6, art. 172 of the Regulations (*not in force*), which provided that "the sale shall be held in the manner prescribed for execution proceedings."

three different occasions in the short lapse of two years this Court has referred to the incompatibility of precepts which still appear in the Mortgage Law and which do not conform to a scientific and duly synchronized plan—*Land Authority* v. *Registrar, supra; Vechini* v. *Registrar, supra;* and the present administrative appeal. The task is not too difficult if we profit, for what it is worth, from the experience of Spain with its reforms of 1909 and 1946 and the new Regulations of 1959. It is fitting to point out that this reform should be aimed at resolving numerous problems pertaining to the registry confronting our increasing industrial economy and the recent urban expansion with their varied credit and finance problems. Lastly, and no less important, it is incumbent on those first called upon to interpret this law to do it in such a way as to facilitate rather than to obstruct the transactions, giving more attention to substance than to theoretical details and having in mind the principle that resort is had to the registry for protection and not for prejudice.[14]

The decision appealed from will be reversed and the registration sought is ordered.

Mr. Justice Ramírez Bages did not participate herein.

---

[14] Since the year 1925 the Legislative Assembly evidenced its concern for the need of reforming the Mortgage Law. In Joint Resolution No. 24 of June 2 of that year (Sess. Laws, p. 1044) reference was made to the numerous amendments introduced in the mortgage legislation of Spain, "a great part of said legislation has fallen into disuse and another part is in conflict with the new legislation introduced by reason of the change of government, and the progress and advancement of our contracts and present environment."

A further attempt at reform was made in 1948 when the noted Puerto Rican mortgage-law commentator, LUIS MUÑOZ MORALES, prepared at the request of the Legislative Consultations Office a preliminary plan of Mortgage Code of Puerto Rico consolidating in a single body the provisions of the Mortgage Law and of the Regulations thereof and eliminating all titles, sections, and provisions which were rendered inapplicable upon the change of government. On March 8, 1950 Senator Cruz Ortiz Stella introduced Senate Bill 191 to create and put into effect the said preliminary plan.